IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WATERLOO DIVISION

| | |
|---|---|
| UNITED STATES<br><br>    Plaintiff,<br><br>vs.<br><br>MUHAMMAD ANWAR<br><br>    Defendant. | No. 6:15-cr-2005<br><br><br>**ORDER** |

On October 29, 2015, following a three-day jury trial, Defendant Muhammad Anwar was convicted of conspiracy to distribute a controlled substance and conspiracy to commit money laundering. He has since moved for a new trial, arguing that the Government violated *Brady*, and that the inadvertent admission of prejudicial information required a mistrial. The Government resists the motion.

## I. STANDARD OF REVIEW

A district court may grant a new trial if the interest of justice so requires, but the remedy should be used "only sparingly and with caution." Fed. R. Crim. P. 33(a); *U.S. v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004). The court need not consider the evidence in the light most favorable to the government. *U.S. v. Gascon-Guerrero*, 382 F.Supp.2d 1097, 1102 (S.D. Iowa 2005). It must, however, uphold a jury verdict unless a miscarriage of justice will occur. *U.S. v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002).

## II. FACTUAL BACKGROUND

The Government indicted Mr. Anwar and two others for conspiracy to distribute a controlled substance and conspiracy to commit money laundering. At trial, the Government's evidence described Mr. Anwar as a wholesaler for controlled substances. He sold two categories

of products to convenience stores and gas stations: "incense," also called "spice," and "bath salts." Incense products contain synthetic cannabinoids, chemical analogues to marijuana's active ingredient. Bath salts contain synthetic cathinones, stimulants similar to methamphetamine. Incense's packaging contrasted with its innocuous name: incense packages usually bore lurid designs, like flaming skulls or gorilla faces covered in rainbow glitter, and unusual warnings, like "not for human consumption," and "fifty states legal." The incense and bath salts Mr. Anwar sold were also more expensive than their household-good counterparts, usually by one or two orders of magnitude. When his customers paid him by check, they would sometimes leave the payee line blank, and Mr. Anwar would fill it in with names other than his own, ensuring the check did not reflect his involvement.

Mr. Ahmed Saeed was Mr. Anwar's business partner, and his co-defendant. He chose to plead guilty and participate in a proffer interview, although he did not testify at Mr. Anwar's trial. At that proffer interview and at a later follow-up meeting, he denied any involvement with the bath salt branch of the business. But on the eve of trial, Mr. Saeed's attorney notified the Government that he now asserted "that he stopped selling bath salts in approximately March 2012." The defense was not notified of the follow-up interview, nor of the email. Mr. Anwar had also entered a proffer agreement with the Government, but did not ultimately plead guilty.

At trial, the Government called fourteen witnesses and entered upwards of eighty exhibits. The witnesses included drug suppliers who had sold large quantities to Mr. Anwar, managers for the stores buying from Mr. Anwar, and two of Mr. Anwar's employees, who had helped him package drugs and managed Mr. Anwar's own store. One of the store managers explained how Mr. Anwar was paid, describing the unusual, incomplete checks he received. Law enforcement officers also testified; they had searched and seized drugs from Mr. Anwar's store

and his customers' stores, and were familiar with the lab tests demonstrating that the seized material contained controlled substances. The exhibits included those lab tests, pictures of where the drugs were found, and the drugs themselves. They also included a check register kept by one of Mr. Anwar's customers, and bank records on the corresponding checks.

At the conclusion of both parties' case-in-chief, the Government requested and received permission to have an agent testify about Mr. Anwar's proffer statements. Agent Hare, an agent for the IRS, testified that Mr. Anwar described entering the synthetics business and selling synthetic drugs. At one point, the prosecutor asked Agent Hare about Mr. Anwar's business relationship with Mr. Saeed. Agent Hare began his answer by referencing Mr. Anwar's earlier "legal troubles," and mentioning that he was "prosecuted federally." The prosecutor cut him off, told him to stay away from that, and explained that the question was only about the business relationship. Defense counsel objected; the Court overruled the objection without a sidebar, but later asked defense counsel to expand on what the Court correctly assumed was a motion for mistrial. That motion was denied.

### III. ANALYSIS

Mr. Anwar asserts two grounds for a new trial. First, he argues that in withholding Mr. Saeed's initial complete denial of involvement with bath salts and his later partial reversal, the Government violated *Brady*. Second, he argues that Agent Hare's reference to Mr. Anwar's criminal history incurably prejudiced the trial, violating Mr. Anwar's due process rights.

**A.** *Brady* **Violation**

The government has an obligation to disclose evidence that is exculpatory and material to guilt. *U.S. v. Barrazaga Cazares*, 465 F.3d 327, 333 (8th Cir. 2006). Mr. Anwar claims that it breached that duty by withholding (1) Mr. Saeed's initial denial of involvement with bath salts,

and (2) his later admission that he was involved until March 2012. He argues that the Government held him solely responsible for bath salt sales to one of the stores at issue, and that Mr. Saeed's admission undercut that narrative. Mr. Saeed's admission was not exculpatory, for two reasons.

First, the Government did not argue that Mr. Anwar alone supplied that store. Earl Ramos managed the store, and he testified that both Mr. Anwar and Mr. Saeed supplied drugs. Throughout the trial, the Government's evidence portrayed Mr. Saeed as Mr. Anwar's partner. Second, Mr. Saeed only admitted responsibility for drug sales that were not part of the case against Mr. Anwar. He admitted supplying bath salts only up to March 2012. Mr. Anwar was indicted for his actions between March 2012 and March 2014. The witnesses at trial focused on that period, and the check stubs the Government offered dated from during and after May 2012. Mr. Saeed denied responsibility for bath salt sales during that period; his statements shift responsibility onto Mr. Anwar. Those statements were therefore not exculpatory, and the Government did not violate *Brady* in withholding them.

**B.     Prejudicial Testimony**

"[T]he decision whether a trial has been so tainted by prejudicial testimony that a mistrial should be declared lies within the discretion of the district court." *United States v. Reed*, 724 F.2d 677, 679-80 (8th Cir.1984). When making that decision, the court can consider the strength of the Government's case, the Government's good faith, the prejudicial effect of the information, and the effect of any cautionary instructions. *See U.S. v. Taylor*, 603 F.2d 732, 736 (8th Cir. 1979) (finding that two cautionary instructions "cure[d] any error… especially in view of the strength of the government's case"); *U.S. v. Aaron*, 553 F.2d 43, 46 (8th Cir. 1977) ("The government played no active role and exercised no bad faith in eliciting this information.").

None of those factors suggest a new trial would be appropriate here. The Court has no evidence that—and Mr. Anwar does not argue that—the Government acted in bad faith. The prosecutor instead immediately cut Agent Hare off and directed his answer away from prejudicial issues. The resulting improper testimony was brief, and while it implied prior criminal charges, it did not imply a conviction. *Compare U.S. v. Maestas*, 554 F.2d 834, 839 (8th Cir. 1977) (refusing to grant a new trial in part because an improper reference "did not imply a conviction"). At the close of the trial, the Court reminded the jury to focus on the crimes Mr. Anwar was charged with, and not on peripheral issues. Although courts often strike prejudicial testimony and instruct the jury to disregard it, the Eighth Circuit Court of Appeals has approved curative instructions comparable to this case's. *See U.S. v. Brandon*, 521 F.3d 1019, 1026 (8th Cir. 2008) (noting that "[a]dmission of a prejudicial statement is normally cured by striking the testimony and instructing the jury to disregard the remark," but approving an instruction to disregard testimony about "any potential crimes which are not involved with this case"); *Reed*, 724 F.2d at 680 (approving a reminder to the jury that the defendant "was on trial only for the charges alleged in the indictment").

Most importantly, there is "strong evidence in the record to support each of [Mr. Anwar's] convictions." *See U.S. v. Maples*, 754 F.2d 299, 301 (8th Cir. 1985). The Government called witnesses from each step of Mr. Anwar's wholesale process: his suppliers, employees, and customers all testified that they saw him buying, selling, and delivering synthetic drugs. Law enforcement officers testified that they seized and lab-tested drugs from Mr. Anwar's store and Mr. Anwar's customers. The Government offered evidence that he knew the drugs were illegal, including pictures of their unusual labeling, evidence of their disproportionate prices, and testimony that Mr. Anwar was told about police raids on sellers. The jury also heard about Mr.

Anwar's proffer agreement, and that Mr. Anwar admitted selling the drugs while willfully blind to their illegality. And the Government provided records and testimony showing that Mr. Anwar concealed the payments made to him. Any prejudice that resulted from Agent Hare's isolated testimony "was harmless in the context of the whole trial." *Reed*, 724 F.2d at 680.

### IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendant's Motion for a New Trial is **DENIED.**

JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

Sitting by Designation